The next argument in the calendar for today is 21-1686 and 21-1712, SEC v. Ahmed. Thank you, Your Honor, may it please the Court, I represent Mr. Ahmed and Mr. Unikowski represents the Relief Descendants and I'm going to go first today. The judgment below should be reversed from the perspective of Mr. Ahmed on three grounds. The first is that the Court retroactively applied a new statute of limitations that Congress enacted despite an overruling, a defense, a complete defense based on the statute of limitations for disgorgement that was not only vested but adjudicated below without the SEC having filed a cross appeal. The second point is that the Court below, within the limitation period that existed before the NDAA, improperly imposed a double charge and required Mr. Ahmed to disgorge more than the amount that he had obtained in illegal gains. And the third point I would like to address today, time permitting, is that the entry of summary judgment in the context where Mr. Ahmed was deprived of the opportunity to see the evidence against him and to oppose it because of redactions made to the record and the fact that he was unrepresented amounts to a violation of due process and of Rule 56 and is not warranted by the Fugitive Disentitlement Doctrine. Before you get into those, can I ask you, if we were to disagree with you in a firm, would your client submit to the judgment below? My client's assets were seized, so I don't think there's a question as to that, Your Honor. I know that he's currently in India, but that has not been raised. I only represent my client in this appeal, and no question has been raised as to whether the assets, putting in mind the arguments of the relief defendants, are sufficient. So there's been no argument that any of his actions have caused or were intended to evade the judgment and the ability of the SEC to execute on the judgment. With respect to the first point, the absence of a cross-appeal, this Court and the Supreme Court have held that although an appellee may urge in favor of affirmance any grounds pressed below, he may not on appeal, absent a notice of appeal or cross-appeal, seek an enlargement of the money that is obtained below or of the equitable relief that is obtained. Yet that is precisely what happened in this case. The Court below held that there was a five-year limitation period at the time of the summary judgment and on remedies in 2018. That was vested, adjudicated, conceded by the SEC. The NDAA then purported to, or did in fact, adopt a longer limitation period in the NDAA. But the statute itself, although it says it applies to pending cases, did not purport to alter the jurisdictional and long-standing rules that absent a cross-appeal, an appellee may not seek enlargement of the remedy that is obtained below. Green law, for example, says that a clear statement is required and looks at the plain error rule, Rule 52B, and says that that did not convince an intent to overcome. You raised these arguments before this Court before and there was a motion order that essentially ordered the District Court to recalculate under the NDAA. Doesn't that law in the case, doesn't that implicitly mean that we rejected arguments you raised below? Well, in the context of this case, it's not, for a couple of reasons. First, the SEC specifically asked for those arguments to be addressed by the first instance court in the first instance, and that those should not be considered by the court. The court did not address the arguments in words in its remand order, despite them being novel and important, some of which have inconstitutional dimension. But if it had found them to have merit, then it could not have issued the order that it did. Well, I'm not entirely sure that's right, but if that was done in error, it would not be binding on this Court as a merits panel, because a motions panel decision is not law of the case. Well, let me ask you, though, the cross-appeal rule is a rule that applies to this Court. It does. What you're appealing is the decision of the District Court. Once we send it back down to the District Court, the cross-appeal rule doesn't in any way affect what the District Court can do. So the cross-appeal rule doesn't mean that it was there in the District Court. The cross-appeal rule... It is a rule about what this Court can hear and enlarge or decide. It doesn't have anything to do with the District Court's jurisdiction. The cross-appeal... This Court has not addressed the question of the effect of the failure of an appellee to cross-appeal on a remand. Numerous courts... I don't have the decision... If the merits panel was incorrect in sending it back for that, you could have sought redress in this Court from the ruling of the motions panel, but you didn't do that, so it went down to the District Court. I don't see what it is the District Court did that was wrong and that would warrant reversal or vacater or anything else now that we're reviewing the District Court's judgment. Well, there... On that point, the courts of appeals that have addressed the question of what the propriety of what a District Court can do on a remand following a failure to cross-appeal, I don't have the decisions at my fingertips at health that, by virtue of both the law of the case and the cross-appeal rule, a District Court is still bound by a failure to cross-appeal. And if we tell it, it can do something? Well, the remand order said... Included words that it was, if appropriate, the discouragement order should be entered. Well, the District Court doesn't say, oh, but you didn't cross-appeal, so I can't do something. That's an argument that can be made to our court about what we can do. I don't see what was inappropriate about the District Court ruling once the matter was before it again. Well, the District Court did not thought that the cross-appeal rule would apply, but said that it was a rule of discretion and that was the legal error. So I don't think the District Court went on that ground. You know, you've used up all your time on whether the judgment should be enlarged. Right. I thought your concern was whether the judgment had been entered cognitio. Right. Well, I do see my time is up. Okay. You've chosen to argue instead about this. Okay. I reserve a few minutes for rebuttal. Thank you. Thank you. Thank you, Your Honors. May it please the Court. My name is Adam Minkowski. I represent the Relief Dependents in this case. We respectfully submit that the District Court erred on two grounds. One is that the District Court incorrectly applied the nominee doctrine. I'm not hearing you clearly. I'm sorry. I'll speak louder. I'm sorry, Your Honor. First, the District Court incorrectly applied the nominee doctrine. Can you hear me now, Your Honor? Yes, absolutely. And second, that it incorrectly calculated interest and gains. So to begin with the first point, we believe the District Court erred in holding that Relief Dependents are nominees of all the assets to which they hold title. The nominee doctrine is one way in which a creditor can recover assets from a third party to satisfy a judgment against a debtor. It applies when there's been merely a bare transfer of title, such that the title holder is the title holder in name only, but the real owner is still the debtor. So the SEC court equates a case called Higgins from the Supreme Court, which we think accurately captures the doctrine. It applies when there's been a transfer from an individual's left hand to the right hand, but there's been no real transfer as a matter of fact. There are six factors in the District Court indicated that it found many of them to weigh heavily in favor of the nominee, especially defendants' control of the assets. I don't think so, Your Honor. I think that the District Court repeatedly said that, well, first of all, we think there's a procedural error regarding the burden of proof, but just to the substance question that Your Honor has raised, I think the District Court repeatedly made clear that it was relying on the fact that the assets had originated with Iftikhar rather than looking to control. So if I could just quote, for instance, the discussion of the family trust, which is page 116 of the joint appendix. So it says, the SEC counters, I'm reading from footnote 21, that the family trust was funded, including $1.577 million from a fraud and $2 million from another fraud. Then it says, because the evidence establishes only that defendant funded the trust, and there is no indication that any other relief defendant also did so, the court is satisfied that the family trust was funded and created using defendant's money, and therefore can be used to satisfy a judgment against him. So the District Court is clearly relying on the source of the assets. And you see that elsewhere as well. You see on pages 112 and 113 of the joint appendix. The District Court says that 98.8% of all the funds the Ahmed receives came from Mr. Ahmed. And then it says, in light of these facts, it is difficult to see, and neither defendant nor relief defendants provide any argument, much less a credible explanation, how Ms. Ahmed and her children could own more than $85 million in assets, while the defendant owns less than $6 million in liquid assets. So the premise of this discussion is that if the money originated with Iftikhar, it's still Iftikhar, and it's available for the judgment. And that's just not the nominee doctrine. I understand on the facts of this case why the SEC, you know, wants to recover the assets from relief defendants. There's many other doctrines that are available to recover assets from a transferee. But I just don't think that the nominee doctrine fits the facts of this case. So you're arguing that as to certain assets or asset classes, the District Court's application of the nominee doctrine was overbroad, not that it was inappropriate. The doctrine itself was inappropriate. Right. So we're not disputing that the doctrine exists. We acknowledge that in the District Court, and we're sticking to our arguments in this court. We're making two points. One is the procedural point, which we did argue quite strenuously in the District Court, that because the SEC is the proponent, it bears the burden of proof, and there's no dispute that relief defendants hold legal title. As the proponent, the SEC bears the burden of proving that, in fact, Iftikhar owns the assets, not just that he funded them, but that he continues to control and benefit from those assets, rather than imposing the burden on relief defendants to prove the contrary proposition. And then, yes, substantive... And how is that handled, you know, sort of, you know, asset by asset? Or... Yes. Is it... The nominee doctrine is... ...a level of granularity that's required from that? Well, it's just an inherently asset-specific doctrine. If you look at the six-factor test, every question that it asks is referring to a particular asset. So a defendant's control over the assets, the length of time the asset has been held, and so on. Every... And I'm talking about 111 and 112 in the Joint Appendix. Every single one of those questions focuses on an asset, and so the fact that someone is a nominee of one thing doesn't necessarily mean that they're a nominee of a different thing. That's consequential in this case, because the facts surrounding different assets were different. Like, you have a family trust that was set up in 2009 under state law with an independent trustee. Then you have, for instance, UTMA accounts for the benefit of the children that were set up over the years. Like, every... There's differences among the different assets, and so I don't think you can say that... So the SEC points to an $18 million transfer that Shalini said she didn't remember, and the SEC highlights that. But that testimony does not establish for every single frozen asset, many of which are transferred under very different circumstances, that she's the nominee. So what we ask the court to do is vacate the judgment and hold, number one, that the SEC bears the burden of proof, and number two, that the nominee doctrine turns on whether it's been essentially a sham transfer, a bear transfer of title, that the real owner controlling and benefiting the asset is if the car. I see... You're going further, I believe, counsel, and I think you're saying that each asset should be assessed individually. Is that correct? Yeah, I do think so. I mean, I agree that in some cases, you know, assets can be grouped if the same analysis applies to multiple assets. Like, if there's 10 assets in a safety deposit box, the same evidence could potentially go to all of them. We're not saying you have to have, like, individual asset evidence for each one, but you have the proof... Classes of assets. Classes of assets. And you separate it out. That's right. That's right. Basically, you're saying a wholesale determination of the fact that they're the nominees is not appropriate in the case. It's complex. There's so many different assets. That's correct, Your Honor. My time has expired. All of the arguments you've made, it seems to me, are addressed by the district court in the pages 110 to 120 of the special appendix. For instance, on this whole thing about the family trust, in footnote 21, the district court does talk about the SEC saying that it was funded with defendant's money, including approximately $1.57 million from the company G-Fraud and $2.0 million from the company I-Fraud. And then she goes on to explain why the evidence establishes, even if the evidence establishes only that the defendant funded the trust, there's no indication that any other relief defendant did so, and the court is satisfied that the trust was funded with fraudulent money. I mean, this is a finding by the district court. It may not be the finding you wanted, but I'm hard-pressed to understand why we would find that the district court erred here. So that's a different theory of recovery. So we actually agree. So there's a question about traceability versus setting aside that question. We're actually not... Well, my point, one way or another, is that the district court appears to have addressed the arguments you're making about these funds, and it found that the SEC established that everything had been funded with monies that Mr. Ahmed fraudulently obtained, and then to the extent there were arguments about individual monies, individual responsibility or management or whatever, the district court addressed it all. No, I don't think so, Your Honor. I think that there's an error of law here. So the first point about funding with tainted assets is not relevant to the application of the nominee doctrine. That clearly would be relevant to Kavanaugh. It clearly would be relevant to constructive trust and other doctrines. It's not relevant to the nominee doctrine, because the nominee doctrine allows the SEC to claim all the monies, not just tainted monies. And the second point, it's true the district court made a finding that the money came from if and only if. Well, the tainted money, certainly. Yeah, that's the Kavanaugh... Yes, that's true. Absolutely. So we've debated the Kavanaugh doctrine. So actually, we're not even disputing that. If it's traceable and tainted, the SEC can get it. I mean, there's a preservation issue, but other than that, we agree with that. But you started with the trust. Yes, I did. And to the extent the district court dealt with the trust, her finding is she found tainted money, went in it, and she didn't find any non-tainted money. Oh, no, that's definitely not the case. That is not the case. The district court did find that tainted money entered the trust. But Iftikhar is making many millions of dollars in untainted money over the years. Something like $65 million of untainted money came in from Iftikhar's earnings. The SEC quotes a number, and it's briefed below, I think, 888-25-26. And even the district court's order, you'll see at page 112, quotes the number of non-suspect sources of income over $62 million. So the family trust is a mix of tainted and untainted assets. Well, I understand there's the question about the life insurance policy. But in footnote 21, she says, the evidence establishes that the defendant funded the trust, and there is no indication that any other legalese defendant also did that. We agree, Your Honor. But he funded it with a mix of good and bad money. That's our point, Your Honor. The nominee adoption allows the SEC to claim the whole amount, even if it exceeds the amount of tainted money. Was your point that there was an erroneous finding of facts? No, absolutely not. There's no erroneous finding of facts. I don't like reading to you the finding of facts. We agree with every single word in that sentence. It says, the evidence establishes only the defendant funded the trust. Fine. The money came from the defendant. And there's no indication that any other legalese defendant did so. Fine. We agree the money came from Iftikhar. The court is satisfied that the family trust was funded and created using the defendant's money, and therefore can be used to satisfy. Every fact there, we are conceding, Your Honor. It came from his money. But the point is, there is a mix of tainted and untainted money from Iftikhar, both of which funded it. And the SEC's position is that it gets everything, even if the amount of money in the trust exceeds the amount of tainted money that went in. That is the benefit of the nominee doctrine. By treating it as Iftikhar's property, it gets everything. So these findings do not establish. Maybe they establish Kavanaugh, which would require the judgment to be reduced. They don't establish the nominee doctrine, which requires that they really be his. There's no basis for piercing this trust under state law. And I realize I'm way over time, and there's other issues. So I'll just say one more sentence. These findings do not establish a basis for piercing the trust. Maybe they establish a basis for Kavanaugh, which is an alternative theory that's been briefed, but not the nominee doctrine. So again, I'm way over. I'm happy to answer questions from the panel about the many other issues that have been raised, but I see I've exceeded my time. Thank you. I have one quick question. Yes. What's the status of the liquidation right now? So we, as the court may be aware, we moved to stay the liquidation of the unique assets, and the court granted a temporary administrative stay. Any further action from the court? So I've confirmed with the receiver that that hasn't stayed, like the life insurance policy hasn't been liquidated. Any other arrests? So the non-unique assets have all been liquidated, and we haven't asked the court to stop the preliminary steps for liquidation. So that's happening. But it hasn't actually been liquidated. If the court hasn't ruled on a stay application and we're on the cusp of actually But other than that, we're not seeking to stop anything in the district court. Thanks. You have a few minutes for questions. Stephen Yoder for the Securities and Exchange Commission. May it please the court, the commission brought this enforcement action to remedy Iftikhar Ahmed's $64 million security fraud by recouping his unjust enrichment and returning it to his victims. The district court reasonably concluded that Mr. Ahmed's wife and children held tens of millions of dollars in frozen assets as nominees for Mr. Ahmed, in light of the evidence of Mr. Ahmed's control of the assets, as well as the other factors in the six-factor test that Your Honor referenced. Moreover, the district court offered Ms. Ahmed and the children every opportunity throughout this case to raise a legitimate claim to the assets, and even expressly requested that they do so at the remedy stage. However, Ms. Ahmed and the children only put forward four conclusory claims in response to the district court's direction. And there I would refer Your Honors to docket entries 862-1 and 919-1. Those are listings by the relief defendants in response to the district court's request. They put forth four conclusory claims, none of which was that the assets were gifts from Mr. Ahmed, and all of which the district court rejected as unfounded. For example, the district court faulted them for not submitting any expert analysis of the assets, even though the court had released frozen funds for the relief defendants to hire an expert. At the end of the day, this decision was well within the district court's broad equitable discretion and should be affirmed. Well, but your adversary's point is that the burden was yours. Yes. And so we would have to find that even before the relief defendants put forward what you're calling conclusory claims, that you would carry your burden. Yes, Your Honor, and we absolutely agree with that. And I think to appreciate what happened here, I'd like to step back briefly and just recapitulate this case. As Your Honors know, this case has been up on appeal once before at the preliminary injunction stage. This court affirmed the district court's asset freeze and said that if the relief defendants wanted assets released from the freeze, they needed to come forward, identify the assets that were wrongly frozen, and submit their legitimate claims to those assets. Fast forward to 2018, I believe it's 2018 or 2017, the district court granted summary judgment against Mr. Ahmed. The commission was preparing to move four remedies in the district court. And the commission said, we have evidence that we will put forward. And the commission did so. That's in docket entry 888 and the exhibits to that brief. And that evidence is quite extensive, Your Honors. I don't want to recite it all. I'm happy to summarize the broader points if you would like. But it is absolutely not the case that the commission was trying to dodge its burden of proof here. The commission put forth proof. And the district court expressly credited the commission's evidence in its opinion below. And that opinion, which my friend Mr. Unikowski was discussing, it starts in the special appendix at page 93 and goes forward. And the district court gives a similar overview of the case and explains that she was crediting the commission's evidence before she turned to the legitimate claims that the release defendants had raised. Do you have any other? No. I don't have any other points to raise unless the court has questions. Sure. What's the status of Mr. Ahmed's criminal case? Has extradition been sought from India? We have a treaty with India. My understanding is that his extradition has been sought, but that it is very difficult to effectuate in these circumstances. I don't know all the particulars of that, Your Honor. But if you would like further detail, I'm happy to follow up after the argument. I'm just asking, what's the status of executing on the bail? I mean, he put up his home in Greenwich. Has that been forfeited? Yes, it has been. The district court in Massachusetts entered a default judgment of forfeiture. That was appealed. The First Circuit affirmed. And now Ms. Ahmed has petitioned for rehearing in the First Circuit. Well, since you have this time and you have no other points, why don't you give us two, three, four points that you think show that you carried your evidentiary burden? Of course, Your Honor. Of course, Your Honor. Well, first I'll turn to the general points that apply to all the frozen assets. In her first deposition, Ms. Ahmed testified that she did not know which of the frozen assets belonged to her. She claimed not to know at all. Right. But now you're again focusing on what the relief defendants did or didn't do. I'm asking you how you carried your burden separate and apart from them. Sure. Sure, Your Honor. I will take the two apartments, for example. These are the Park Avenue apartments held by Dia Holdings and Dia Real Holdings, the two limited liability companies. And both of those were previously addressed in this court's preliminary injunction appeal. And this court sustained a freeze over those assets based on the Kavanaugh theory because it accepted the commission's evidence tracing both of those assets to funding that came from Mr. Ahmed from his fraud proceeds. In addition, the commission submitted evidence, and this is in our brief below. I would point to docket entry 888 at pages 33 to 37, where Mr. Ahmed was closely involved with the purchases of the condos and with negotiating the lease for the first condo. When Ms. Ahmed was questioned about the lease for that condo, which she claimed to own herself and to control herself, she did not even know the basics about the lease for that condo. The second condo was never leased because it was acquired shortly before the commission brought its action and obtained a freeze. So that was evidence that the commission gave that Mr. Ahmed was closely involved in the purchasing and leasing of the condos and that they ultimately derived from his fraud proceeds. Would you like me to address other assets? Well, you heard your adversary's argument as to why you didn't carry your version on the nominee doctrine, so I'm waiting to hear how you did that. Yes, we did that, Your Honor, in light of the six-factor test that this court has previously approved by summary order and the district court articulated in its decision below. That decision looks at control as one factor, but this court in the Bilionis, forgive me if I'm mispronouncing that, said that the court takes a pragmatic approach to control and it can look to equitable ownership in determining control of an asset. In addition, the six-factor test looks at sources of funding for the assets and contributions to the assets, all of which Mr. Ahmed provided here. The six-factor test also looks at how recently the asset was acquired. In this case, the two condominiums were acquired relatively recently. The one was acquired, as I understand it, just months before the commission brought its action. So those are several factors that were in the commission's evidence that met its burden of proof and that the district court chose to credit. And the district court's factual finding is reviewed only for clear error and I respectfully submit that my friends here have not shown that that finding was clearly erroneous. All right, but you're focusing on the two condominiums. Yes. There are other assets, too. I mean, part of their argument is that you didn't do this asset by asset and I haven't heard you as to whether you think that's a problem or not or what. But, you know, you focused on two assets. Yes, Your Honor. Not the myriad others. That's the last category in the schedule. A, there was some art, handbags, jewelry, things like that, but there seems to be no finding of a lot of the ones that were acquired. Yes. Our position is that the district court did find with respect to all the assets, even if it didn't make specific findings in its opinion. The district court has said this repeatedly in subsequent decisions that I have found that the relief defendants were nominees with respect to each asset. With respect to the jewelry, Your Honor, I would point to the fact that, pardon me, for the Harry Winston jewelry, we've shown that the jewelry was funded with Mr. Ahmed's proceeds. In addition, when Ms. Ahmed was deposed, she expressly rejected the suggestion that these were gifts. She said, no, I provided marital goods and services to my husband in exchange for these assets. Again, you're shifting the burden.  It's your burden, is it not? Certainly, it was our burden to show how the assets were purchased and where the funding for them came from. To the degree we relied on that for the Harry Winston jewelry. We did do that in this case. Moreover, much of the jewelry was kept in the Ahmed safe deposit box. When Ms. Ahmed was questioned initially, she said she had no idea what was in the safe deposit box, no idea what was in there. When shown the jewelry, this Harry Winston jewelry. You established that it was the Ahmed safety deposit box and that he had purchased the jewelry. Yes. Because she didn't know anything about what was in the box or whatever it was she said, you're saying there's nothing to rebut what you said. That's correct. There's nothing to rebut it, and that also explains why the commission pursued a nominee theory in this case as opposed to traditional relief defendant liability under this court's Kavanaugh decision. Because the quintessential nominee is a nominee who really knows nothing about assets that have been placed in his or her name. Ms. Ahmed did that from her first deposition in this case, and the commission therefore adjusted its theory accordingly, and the district court accepted that theory. And the commission absolutely put forward evidence as to all of the significant frozen assets. The district court may not have made express findings as to each asset in the list of frozen assets, but the district court did credit the commission's evidence, which included general evidence of Mr. Ahmed's funding of the household. The relief defendant's own expert developed a report that showed that 99% of funds coming into the Ahmed household during the relevant time period originated from Mr. Ahmed. And there was no showing that funds were coming from other sources other than the amount that Ms. Ahmed had earned previously through her work at Goldman. But her assets that were traceable to her Goldman earnings were released early on in the case at the preliminary injunction stage. So in cases where the relief defendants put forward a legitimate claim to segregated assets from an independent source, we absolutely honor that, and that was released. In this case, however, the commission put forward evidence of general funding of the household by Mr. Ahmed. That, together with Ms. Ahmed's disclaimer of any knowledge as to what assets were owned by her, strongly suggests that she was merely a nominee for the major assets. So the relief defendants also, switching gears a little bit, ask about or challenge the district court's calculation discouragement on actual gains. Yes. And so supplemental enrichment seems to me, at equity, require some kind of check, not just double counting, but also that any gains not be unduly remote from the fraud. Yes, Your Honor. And it's not clear to me what your response is to that. I think our response is that this district court certainly had discretion to limit the amount of actual gains that were to be handed over to the government to be returned to Mr. Ahmed's victims. And the district court could have a portion of some value. How did the district court do this sort of check for whether the gains were unduly remote from the fraud? Well, I don't know that the district court expressly walked through that analysis in this case. But it was certainly raised before the district court that Mr. Ahmed and the relief defendants argued that it was their investment acuity before the freeze that should be credited rather than the simple accumulation of gains during the freeze. So I don't think the analysis is expressly there in terms of use value. And I would like to remind the court that a lot of this case was briefed and argued before the district court, before the Lew decision came down. So the decision as to gains originally came down in 2018. It wasn't reaffirmed in 2021. I guess my question is, it has to comport with whatever the district court did. It has to comport with principles of equity. And I don't see that in there as to, you know, in the calculation of what the settlement was. Certainly, the district court did not make that express in its decision. But that doesn't necessarily mean that the district court overlooked the Ahmed's arguments that they should be entitled to the frozen gains. The district court explained at length why it thought this court's precedence in Manor Nursing and Rasmilevich supported the turning over of the actual gains. And our briefing on appeal points to section 53 of the restatement of restitution third, which does support the turning over of actual gains in cases of actual fraud where the defendant has been shown to act with scientia. In those cases, courts of equity did frequently turn over the actual gains on proceeds or on the amount that was stolen in the case of an accounting to compensate the victims. Thank you. Thank you, counsel. Okay, let's go back to Mr. Levy. Thank you, Your Honor. This case presents at least two issues that are novel and of first impression and vitally important. One is the revival of a time-barred claim where there's an adjudicated and a vested limitation period and there's no clear expressed language requiring that result. That runs right into this court's decision in enterprise mortgages and particularly in a case where there's no cross-appeal. Enterprise mortgages says that you need to use clear expressed language to revive or more of unclaim something like the expiration of the statute of limitation. We also cite Kansas Public Employees case citing Kansas law saying that words like shall revive are required to accomplish that objective and words like shall apply retroactively are not good enough. And the context where there's a vested limitation period that has not been crossed or appealed, the words that Congress used here are just not good enough. The other vitally important novel issue in this case is there is no precedent that we have found none in which a court has applied such a one-sided approach to entering summary judgment where the party has been deprived of the opportunity to see the evidence against him or her and the opportunity to respond. The Deegan case comes closest and that case where the fusion of this disentitlement doctrine did apply, the Supreme Court said that that doctrine is too blunt an instrument where there are other tools at the ready. Here, Mr. Ahmed was found by the district court to be a fugitive from another case that was not related to this one and the district court did not explore or other tools... How would the district court enforce discovery sanctions against your client? Well, there hadn't been any violation of a discovery order or anything like that. The argument is that the rationale behind the fugitive disentitlement doctrine seems to apply here. It's not enforceable if you're trying to get the benefit of something from the court without submitting to its authority. Well, again, number one, it does not apply in this case. Number two, there are many tools at the district court's disposal including non-monetary sanctions and also monetary sanctions. Non-monetary sanctions. Well, but how would those be applied to someone who has absconded? I mean, the district court had discovery that it wanted to make sure it was kept confidential. Now, in turning it over to Mr. Ahmed, how would the court be confident that it could enforce that if there were any violations? Well, number one, it could have allowed for the appointment of counsel. That's number one. How would that result in the enforcement of the order? Because counsel, I was allowed to see some discovery material once I was appointed for this appeal under the limitation that I could not share that material with Mr. Ahmed, and I have not done that. You think that that would have been acceptable, to not share it with the parties, to only allow it to be seen by the attorney? I mean, you're in a different position. You're arguing about what has happened. Yes. Discovery is granted for a very different purpose, and I'm surprised you think that it would have been satisfactory to disclose it to counsel and not to the parties. Well, it happens from time to time, and for example, in patent cases where there are attorneys-by-his-only limitations for highly confidential material, but as a general matter, under American law, parties get to see... So your argument is that the court should have appointed counsel. Is that right? Or allow him to see the evidence, and there are ways to safeguard, to ensure that if there are breaches, that there would be consequences, including the imposition of fines, given that money had been seized. Right, but that was the point. I mean, the government was seeking the forfeiture of the money, and if they were successful, a fine would be meaningless. Well, that assumes that the government would have won it all on everything, and there are and there was excess money. There are also... It seems to me not to be a satisfactory conclusion to say that you're litigating about a certain asset and telling him that he'll have to pay a fine out of that asset, out of that claimed asset, is going to discourage him from violating the protective order. Your client, in terms of your client's due process, your client always held the key to being able to see everything. All he had to do was come back to the United States. Well, he... Again, we didn't represent him below. He said below that there were restrictions on his arrest in India that barred him from returning to the United States. So I don't know the answer to that, but the point is, in Deegan, which was a Supreme Court decision where there was a fugitive from a related case, unlike this one, the court said that disentitlement was too blunt an instrument. And our point is that there are other... I'm not suggesting that the disentitlement doctrine applies here. It operates very bluntly. I'm just saying in this case where the court thought it needed to impose a protective order and your client was not in a position to have it enforced against him, how that's a violation. Your client absconded while this case was pending. So he absconded knowing that it meant he wouldn't be responding to this case, right? Yes, but there was no... It's not as if this case had been brought after the fact. This is true. There was no finding that he was absconding from this case. And the one case where this court has found that there was a fugitive from a civil case involved a fact pattern where that court had entered a judgment against the defendants. There was an arrest warrant as against those defendants. Those defendants violated the arrest warrant, didn't show up, and they were interfering with collection of a judgment that was on appeal in this court. And in that process, the court said, well, you will not be able to prosecute your right to an appeal. This is an entirely different situation where someone has been deprived of the option to see the evidence against him, of basic notice, and the option to respond. And that goes to the very heart of our American system of justice, and we have not found a precedent to support it. What's your client's status in India now? I'm sorry, Your Honor. What's your client's status in India now? Is he incarcerated? Are there pending charges? Has he resolved everything? What's his status in India? I am not aware of his current status with the Indian authorities. I understand that he's in India. I thought counsel on both sides was remarkably uncurious as to this question. I mean, you're telling us your client couldn't come here. Well, can he come here next week? I'm not aware of the restrictions that he said applied and that his counsel told the court below did apply have been lifted. I am not aware of that having happened. But I cannot make a representation to this court as to his current status. Okay. Finally... Take a minute to wrap up. Thank you. I did just want... Obviously, we rest on our papers, and there are a lot of issues and limited time. The order imposing disgorgement, even without regard to the limitation period, did impose a double charge on Mr. Ahmed for several reasons, one of which is that his employer seized $35 million worth of assets that were his on account of the very conduct that formed the basis for this SEC enforcement action. But pursuant to a contract, right? That's absolutely right. But if there had been a lawsuit where he was sued for a breach of contract claim for engaging in the very same conduct that formed the basis for this suit, and his employer recovered under a theory of tort or breach of contract, he would have lost the benefit of his misconduct. And the point... And yet you think that's double counting. I mean, the employer's forfeiture of the money was for a breach of contract. The SEC's seeking the money for a very different reason. It's true, but the legal point is whether Mr. Ahmed is forced to pay twice for the same conduct. And whether he is being forced... Well, there's two different kinds of conduct. One is fraud, and the other is a breach of contract. And the victims are different. The contract requires them to forfeit the conduct on the basis of the same conduct, disabling conduct. And the question is not where the money goes. The question is whether he has, and is retaining, unlawful proceeds as a result of his misconduct. And if he's already had to give up $35 million, putting him back in the position where he would have been had he not engaged in the misconduct requires giving him a credit for that money if it is worth something, and it was. The court should have had a hearing to determine the value. It did not. It only held that it was forfeited on the basis of disabling conduct. And that's not good enough under lieu. Well, let me ask you, does the employer have any obligation to use that $35 million to compensate the victims here, the other victims of the fraud? Well, the victims of the fraud are funds that are owned by the employer, Oak. So they're funds held by Oak. So I'm not sure, but again, the point isn't where the money that is forfeited goes to. It is whether Mr. Ahmed is put back in the same position he would have been had he not engaged in the misconduct. That is the only and sole purpose for disgorgement. Thank you. I appreciate the court's time. Mr. Jankowski, you have a few more minutes as well. Thank you, Your Honors. I'd like to say a few words about the apartments because that's an issue that the commission's counsel raised, and I think it well illustrates the error we're serving in this case. So in the interlocutory appeal, the court held that those could be frozen under Kavanaugh. We actually don't dispute that to the extent Kavanaugh is available, then those can be taken under Kavanaugh. That's pretty clear from the record. But the district court instead relied on the nominee doctrine, and the SEC didn't prove that Shalini was the nominee of those assets. The record shows that she interfaced with a real estate broker. She conducted walk-throughs with the properties. She interacted with the tenants. And she pocketed all the money from the rents. All that, I think, is not disputed. It's true Iftigar helped her with the lease, but there's lots of evidence that she personally was involved in the apartments. And so I don't think you can say she's a nominee on those facts. And what's important is the district court didn't resolve any of this. It actually didn't say anything about the apartments at all. In its opinion, I think it just assumed from the prior appeal that because Iftigar had funded the assets and they were frozen under Kavanaugh, they could be used to execute a final judgment. Again, under the Kavanaugh theory, that might be right. But it's not a correct application of the nominee doctrine. And this act of distinction matters because the judgment would change under Kavanaugh. Even assuming Kavanaugh applies his final judgments, the SEC would get up to the amount of money, of taken money that was transferred to the relief defendants plus potentially interest. It wouldn't justify every single dollar. So again, I mean, the apartments, I understand the facts are not favorable, as the court said in the prior opinion, but she's just not a nominee of those items. I'd like to make one other point, which is that it's not clear to me that there's a clear error view of factual findings here. Like, this was on the papers. There's no trial. But it doesn't really matter, actually, because we're not challenging the factual findings. Essentially, the district court found, and we're not challenging that Iptikhar had funded everything. To the extent there's a factual finding, that's what it is. There just aren't factual findings specifically about control of really any assets, much less all of them. So I think there's just a gap in the record because of a legal error, both procedural and substantiated by the district court. And that's what we think is reversible in this case. There's also a lot of issues raised in our brief. I'm happy to answer any questions from the panel on any other issue. Thank you, counsel. Thank you all. We'll take the case from your husband. The next argument is on case number 22-967, Integrated Media Resources v. Moore. Elizabeth, please. Good morning. May it please the court and your honors. I am Elizabeth Bill Sidwith Brewer, and I'm here today on behalf of the appellant, plaintiff Iyemar. The issue of this appeal is whether the court below should have dismissed with prejudice and without leave to amend the securities fraud claim in Iyemar's complaint filed in 2021 on grounds that it was time-barred by the five-year statute of repose. Iyemar's position is that the court should not have done so because the complaint, on its face and expressly, alleged, one, misrepresentations, and two, a scheme to defraud under Rule 10b-5, the scheme of which included fraudulent acts and practices that ran from 2016 to 2019, which are within the five-year statute of repose. Now, if I may, I would like to tell the court and advise the court that as recently as 2021, courts have stated that the issue regarding when the repose clock begins to tick in the Section 10b-5 case is not cut and dry and is an open issue. Can I ask, your client's purchase was in 2014? The purchase was in 2014, Your Honor. Is that the only sort of loss we're talking about here? Well, the purchase was in 2014, Your Honor. That being said, from 2016 to 2019, as alleged in the complaint, there was a scheme to defraud, which included a variety of acts in order to prevent my client from transferring the assets. My client had the right to transfer the assets pursuant to the subscription agreement, which is attached to Exhibit 14 of the complaint. And under that subscription agreement, it states that the transfer of assets is allowed. Well, I'll read verbatim, if I may. No member shall transfer any units except in compliance with Section 8.1b and the prior written consent of a majority of the members of the Management Committee, which majority includes Defendant J. Todd Morley. And that is found at page A326, Section A of the Record on Appeal. Counsel, the violation is a misrepresentation in connection with the purchase or sale of the security. I understand how misrepresentations made up until your client's July 6, 2014, are actionable, but I'm not sure how misrepresentations made after the purchase are misrepresentations in connection with a purchase that's already occurred. I understand, Your Honor. And what I think is an error in the decision below is that the Court only focused on the misrepresentations in 2014. What the Court below in its decision ignored are the substantive allegations of the complaint regarding a scheme to defraud. In fact... But it has to be a misrepresentation in connection with the purchase of a security. Or the sale of a security. Or the sale of a security. Yes. There's no sale here. There was no sale here because under the terms of the subscription agreement on the scheme to defraud, which Morley, who is the key fraudster in this case, along with the other defendants, did, is every time our client went and asked about the status of his investments, a lot of fraudulent statements were made and acts done to prevent him from attempting to transfer the UNIS, excuse me. For instance, there was... There was no sale. Pardon me? There was no sale. What you're saying is that your client might have sold it and told the truth. So it's the absence of the sale that you're talking about. Well, there was no... Well, it is correct... Where do you get that thing for a fraud? Well, while there was no sale, the reason there was no sale, i.e. a transfer, was because you need to get the consent and the majority vote of individuals, namely Morley. And in order to prevent that sale, because this is a private product, this is a product that is not on the open or public market, this is something that needs the consent of the defendant here in order to execute that sale. And what Morley did, as well as the other defendants, is it made representations from 2016 to 2019 regarding sham loans, regarding efforts to pay taxes that were not done. I understand that. But it's a fraud in connection with the purchase of a sale and securities. And I think what you're saying is that statute should be put broadly to say who are the non-salesmen. And I don't see that in the text. I don't see it as part of the fraud. That's an issue. Or in any authority. Do you have any case in which an action has been allowed for a failure to sell based on a fraud? Well, I would bring up two points. I don't have a case. That being said, courts, as recently as 2021, have noted that this is an open issue. And, in fact, a judge of this circuit, Judge Guido Calabresi, noted in the Stultz v. Dam decision, which is at 355 F3D 92 on page 107, Judge Calabresi wrote, giving repose to a defendant who has ceased to do wrong may well be worthwhile, even if it is unfair to a plaintiff whose cause of action has not yet accrued. But, this is a big but, it is a different thing altogether to give repose to a defendant who continued his wrongful wrongdoing. Excuse me, wrongful conduct. Perhaps even beyond the time specified by the repose period. The SEC has even noted in secondary services that they think that it was inadvertent that there were certain statements, such as the one that Your Honor Walker has noted, to not include things such as the non-sale of securities. And, I think this is a very important and distinct case because here we have a private product. Again, a product that, unlike a stock, cannot be sold on the public market. This is something where my client, the plaintiff, had to get the consent of Morley. Morley, who is continuing to engage in wrongful conduct. Morley, who, not just in 2014, but also in 2016, 2017, 2018, 2019, 2020, did things to siphon funds from investors, including plaintiffs, and took that money and rendered G2, the security here, valueless. If we look at the history of the cases that speak to Rule 10b-5 and the statute of repose, the vast majority of those cases are with respect to a stock, to public products. Here, this is a private product. It is a very significant difference in detail that I think should be considered here. If I may, I also think it is quite significant that, in this decision, not only was it a glaring omission by the court below to not speak to the scheme to defraud, which is described expressly and repeatedly in sections, excuse me, pages A13 to A53, paragraphs 4, 7, 8, 65, 66, 70, 71, 108, 102, 121, 158, 173, 189, 192, and paragraphs 118 to 124, as well as paragraphs 173, that the court did not speak to the scheme to defraud and simply outright dismiss the complaint that had never been amended, with prejudice and without leave to amend, is not the exercise of justice that was required here. As the court is well aware, as counsels were aware, under Rule FRCP-15A2, it states the court should freely give leave when justice so requires. And in this case, unlike the cases cited, there was never an opportunity to amend the complaint. If the court had found that the complaint should have been pled more artfully, it should have allowed at least one instance for leave to amend. That was not the idea. Is there a pleading that would eliminate this problem, or basically what you're asking for is that the pleading should be deemed sufficient based on the 2014 to 2019 mistakes? I would say two things. I think that the way the complaint is written does provide for a timely stated claim. That being said, if given the opportunity to amend this complaint, these allegations could have been more artfully and more clearly stated so that the court perhaps would not have omitted a discussion of the scheme to defraud. But I will submit that, as noted in the paragraphs I cited, it is very clear that my client, the plaintiff, did not simply allege misrepresentation in 2014, but alleged a very clear scheme to defraud from 2016 to 2019. Thank you, counsel. Thank you. Thank you. Mr. Rowe. Good morning, Your Honors. May it please the court. My name is George Rowe, along with my colleague Howard Shifton. We represent Defendant Appellee Jonathan Todd Morley. We would ask this court to affirm the dismissal of the time-barred Section 10b and Rule 10b-5 claim, which was based entirely on a single purchase of securities in July of 2014, which was nearly seven years before Ponk filed suit and, therefore, outside the five-year statute of repose. As Judge Cote correctly held below, a Rule 10b-5 violation must be in connection with the purchase or sale of securities. And here, the only purchase or sale of securities alleged and, therefore, the only possible violation occurred in July of 2014. Your Honor, there seems to be argument that her client was unable to sell subsequent to 2014 because of the ongoing scheme. Well, to that I would say, and there's a discussion of this in the Chiva case that we cite in our brief, that scheme liability needs to be applied specifically. And I note that this argument was not raised in Apollon's brief in this appeal as to the scheme liability versus misrepresentation argument here. Even so, since in this case there was only a single purchase or sale of securities, as this court held in Arnold, the statute of repose starts to run when the parties have committed themselves to the purchase or sale transaction. And as I said, here, there was only a single purchase or sale transaction. And to the question that you asked, Dr. Aggi, we will submit that there is no possible amendment here because there was, again, a single purchase or sale of securities. Just to be clear on that, I think your adversary was suggesting with amendments you might satisfy scheme liability. I want to be sure I understand your position on what would be sufficient to satisfy scheme liability. The case you're pointing us to on that is what, again? That's the Teva case in the District of Connecticut. It's 512F321 cited in our brief. What the complaint alleges, Your Honors, is effectively there's a single purchase and then there's a series of misrepresentations that are very generally just about the entity in which Apollon invested. You know, those statements are not connected in any way to the initial investment by Apollon. No, but they are. They're, in effect, could be argued to be statements roughly the equivalent of a wallet. This statement is in order to keep the plaintiff uninformed about the problems, the lawfulness of the transaction. I would say that there's another case that we cited in our brief, Leona Carrier. In that case, similarly discussed misrepresentations that were made after the purchase of sales securities, generally about the financial conditions and prospects of the companies after the plaintiff's purchase of securities in that case. That case, Leona Carrier, followed this court's decision in Arnold as well, as well as distinguishing the cases that Apollon relies on, those earlier cases, Plymouth County, Beacon, and Dynex. The Beacon was the only case of those that actually was following Arnold, but it cited cases exclusively that predated Arnold in its analysis and did not cite or consider Arnold. Now, I also want to discuss going back to the requirements for avoiding dismissal under Rule 10b-5. Apollon acknowledges that it must be, among other things, they must allege that the misrepresentation is in connection with the purchase of sales securities. And that's important because the language, if you look at the statute of repose in 28 U.S.C. 1658B, expressly requires not just misrepresentations, but a violation. And the violation requires satisfying all of those elements. And as this court has held, the third and fourth elements of a Section 10b claim in transaction causation, which Apollon also cannot satisfy based on the timing of its argument. In other words, Apollon cannot have relied on misrepresentations that were made after it had invested and engaged in the only purchase and sale securities that's alleged here. Let me ask you about the following scenario. Your advocate said this was a situation where her client could not sell his securities without the defendant's consent. Do you agree with that? That argument has not been raised before. I would have to look at that in the subscription agreement. If that were the case and the plaintiff came to the defendant and said, I want to sell my shares, and the defendant made a misrepresentation to the plaintiff in those circumstances and the plaintiff relied on it and didn't sell the shares, what's your position on whether there could be any action there? Well, I hope it's simply saying whether or not the plaintiff could or could not sell would necessarily be a misrepresentation in that instance. And we also cited the Supreme Court's decision on blue chip stamps regarding the holding that would be insufficient for a plaintiff to prove that it failed to purchase or sell stock.  but I'm wondering whether you want us to consider these particular circumstances where the fraudulent misrepresentation is made by a party whose consent the plaintiff was basically seeking because she needed to. She couldn't go on the market or her clients, I should say. So they came and said, I want to sell, implicitly saying, you know, consent to my selling, and instead of consenting, your client makes a misrepresentation. Are we in the security flaw or not? First of all, it's a good question, but I don't think that's alleged anywhere here. There's no allegation that the appellant came to my client and requested permission under the subscription documents to make some sort of transfer, as my friend here said, first of all. And as I said, even if my client had turned the appellant down, it would not have been a misrepresentation alone. And so we don't believe that it would have satisfied or constituted a violation of Section 10b or Rule 10b-5. We also submit that this court should follow the reasoning in Arnold in that appellant has not provided any convincing basis for the court to depart from its reasoning in that case. The court in Arnold addressed an identical argument to the one that appellant advances here and found that that argument, that misrepresentations, even after the final purchase or sale of securities alleged, could start the running of the statute of repose, ignored the applicable limitations period, and was thus devoid of merit. And I also wanted to note that as the appellant relies on certain earlier district court decisions, and that following those district court decisions, none of which, again, are after 2012, there have been a series of decisions within the circuit, both outside the District of New York as well as the Teva case and the District of Connecticut that we cited, which all follow Arnold consistently. And in fact, even to the extent that there's any cases that have adopted this last misrepresentation formulation, they've only done so in cases presenting a situation where the alleged misrepresentation, which was considered the last one, was actually before the only purchase, before the purchase or sale of securities at issue in that case. And furthermore, appellants cite Enri Beacon, which self-cited Plymouth and Dynex. Plymouth as well also relied on Dynex. And in Dynex, the court there actually specifically distinguished this opinion, the judge there distinguished his decision in Dynex from one of his prior cases in Shalom v. KPMG where he had found that the plaintiff's Section 10b claims in that case were barred by the statute of repose because there were no securities transactions alleged within five years of the plaintiff filing suit. So even under that line of cases, Beacon, Plymouth, and Dynex, they all rest on the Dynex,  that there was a purchase or sale of securities within five years of filing suit, which is obviously not present in this case, nor could that be alleged here. I'd also like to, I see my time is running out, I would also like to address just briefly, appellant made a number of arguments regarding policy reasons, citing Supreme Court and congressional intent. And I think it's quite clear in SF-400 papers that the Supreme Court has stated that the statute of repose at issue here was a clear expression of congressional intent. It was intended to be an unqualified bar on actions instituted five years after such a violation and to give defendants total repose after five years. So I think it's quite clear that the statute of repose is intended to be an unqualified bar and that attempts to extend the statute of repose without any purchase or sale of securities should be rejected. Thank you. Thank you. Thank you, Your Honors. I would like to address some of the arguments raised by opposing counsel. First, opposing counsel states that if we wanted to take the position that there was a scheme to defraud here, perhaps we should have led that with more specificity. And if that were the case, then yes, indeed. That's why we're saying that the court should not have... The court below should not have outright dismissed with prejudice and without leave to amend. Did you argue that the district court is a reason not to dismiss that you wanted to plead a scheme to defraud separate and apart from the sale? Your Honor, the scheme to defraud is alleged in the complaint in multiple sections. Did you argue to the district court that that would be a ground... I believe we did, Your Honor. I will say I did not make that argument. That being said, I do not know. But I believe we did. I personally did not make that argument. I would also advise the court that even if it not have been alleged, under FRCP Rule 15, when justice requires amendment may be given, a case may also proceed without prejudice. The problem is we don't know what you could plead and whether it would be sufficient. But you knew this back when you were before the district court. Similarly, if your theory is that refusing to let you sell in these circumstances somehow created a cause of action, you knew that in the district court. Instead, as I understand it, the only thing before the district court was whether fraudulent statements made after this sale nevertheless were actionable. Well, the court, in its opinion, only discusses the misrepresentations at the time of sale. They do not address the allegations in the complaint where we allege multiple times a scheme to defraud. We state and discuss a scheme at least 16 times. The word scheme appears in the complaint 16 times. Right, but we're looking at your claim. I'm looking at your claim, and it seems to relate only to the one transaction. There was one transaction, but as to a question raised by Judge Walker, our position is that we could not sell because there was provision regarding the transfer of assets. Clearly, a sale would be encapsulated within such a transfer. Because we allege the scheme to defraud, which included sham loans from 2016 to 2019, and those are alleged in paragraphs. Scheme to defraud you how? Because in the complaint you say that they inflated sales with stock and that then your client purchased shares at that artificially inflated price. I'm at 853 paragraph 191. I don't see where there's any injury attributed to a scheme to defraud beyond that. Yes, well, there's a section entitled plaintiff's damages and loss causation, which begins... I'm looking at count one or claim one. Yes, claim one. Because after that, we're into state law claims. I understand, Your Honor. I'm really only looking at pages 52 to 54 to understand what your federal claim is. Yes, and under count one, we do allege in our first paragraph that we incorporate our allegations above into that count. That may be so, but this isn't a matter of the court hunting for what theory you could possibly claim. Are you telling me this was meant to alert people, to put people on notice that something other than that sale was being alleged to be fraudulent? This was to put people on notice that the defendant Morley and the insider defendants were concealing information and stifling millions of dollars from the defendants. In fact, the insider defendants, in fact, conceived that they also invested in these products and lost millions. This is a scheme that not only defrauded my client of $1.5 million, but took money from multiple investors here. All right. Thank you. If I may... I will close in one minute. Why don't you briefly wrap up? Thank you. With respect to the Arnold case, in that case, there was a third amended subpoenaed issue. In here, we were never given an opportunity to amend. And finally, I would urge the court to consider the allegations regarding scheme liability as cited earlier in my opening and also to consider that this is a private product for which it's a very recent breach of securities when this Rule 10b-5 was articulated. It was mostly in regards to public products, such as stocks. And with that, I conclude. I do believe that the decision should be reversed and remanded, and it should not have been dismissed with prejudice. Thank you. Thank you, counsel. Thank you both. We'll take the case under advisement. And that concludes our arguments for today. So I'll ask the court to adjourn. Thank you. Thank you. Court is adjourned. Thank you.